UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARY SOULES, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:14-CV-1045 (VLB) |
| | : | |
| v. | : | |
| | : | |
| THE STATE OF CONNECTICUT, | : | |
| THE STATE OF CONNECTICUT | : | |
| DEPARTMENT OF EMERGENCY | : | |
| SERVICES AND PUBLIC PROTECTION, | : | |
| THE TOWN OF OXFORD, | : | |
| GEORGE R. TEMPLE, and | : | |
| DANIEL SEMOSKY, | : | |
| | : | |
| Defendants. | : | SEPTEMBER 30, 2015 |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [Dkt. 33, 35]**

I.     **Introduction**

The Plaintiff, Gary Soules ("Soules"), brings this action against

Defendants, the State of Connecticut (the "State"), the State of Connecticut

Department of Emergency Services and Public Protection (the "State Police") and

Daniel Semosky ("Semosky"), in both his official and individual capacities

(collectively, the "State Defendants"), as well as the Town of Oxford (the "Town")

and George R. Temple ("Temple"), in both his official and individual capacities

(collectively, the "Town Defendants") for Intentional Infliction of Emotional

Distress.  Further, Soules alleges (against only the State, State Police, the Town,

Semosky and Temple in their official capacities) violations of the Americans with

Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"); the Rehabilitation Act of

1973, 29 U.S.C. § 794 et seq. (the "Rehab Act"); the Age Discrimination in

Employment Act of 1967, 29 U.S.C. 621 et seq. (the "ADEA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) ("Civil Rights Act"); Connecticut Fair Employment Practices Act, C.G.S. § 46a-60 et seq. ("CFEPA"); and the Uniformed Services Employment & Reemployment Rights Act, 38 U.S.C. 4301 et seq. ("USERRA").  Finally, Soules alleges (against only Temple and Semosky, in their individual capacities) constitutional violations of the U.S. Constitution, Amend. I (Freedom of Speech), Amend. V (Due Process), and Amend. XIV (Equal Protection) pursuant to 42 U.S.C. § 1983, and alleges Municipal Liability for such constitutional violations against only the Town pursuant to 42 U.S.C. § 1983.

The State Defendants have moved to dismiss Soules' Amended Complaint in its entirety for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), for lack of personal jurisdiction on account of insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5), and/or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  [Dkt. #35, State Defs.' Mot. to Dismiss at 1].  The Town Defendants have also moved to dismiss Soules' Amended Complaint in its entirety for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. # 33 Town Defs.' Mot. to Dismiss at 1].  For the reasons that follow, Defendants' Motions to Dismiss are GRANTED IN FULL.

II.   **Factual Background**

The following facts and allegations are taken from Plaintiff's Amended Complaint.

Plaintiff is a twenty-nine year old police officer who began employment with Defendant Town of Oxford on March 28, 2007.  [Dkt. #28, Amend. Compl. ¶¶ 5, 16].  He alleges that he is the youngest member of Town's Police Department. [Id. ¶ 24].  Plaintiff also alleges that he is a combat veteran of the United States Army who suffers from Post-Traumatic Stress Disorder ("PTSD").  [*Id.* ¶¶ 6, 17]. Further, Plaintiff has an unspecified "permanent partial disability" to his knee, which he injured while "in the line of duty."  [*Id.* ¶ 53].  Nonetheless, Plaintiff has been able to perform "the essential functions of his employment with or without reasonable accommodation."  [*Id.* ¶ 20].  He claims he has been "nominated [for] and [has] received numerous accolades and citations," and was even named "Officer of the Year."  [*Id.* ¶ 21].

Defendant Temple is the First Selectman, and chief executive officer of the Town; as such, he is "the highest ranking governmental authority and policy setter" in the Town.  [Id. at ¶ 10, 34].  Defendant Semosky is a Sergeant in the State Police, as such he is an "employee, officer and agent of the defendants State [] and State Police."  [*Id.* ¶ 11].  Pursuant to Town's policy to employ members of the State Police to work "in conjunction with" the Town's Police Department, Semosky is the "permanent supervisory authority of the Resident Trooper program in Oxford."  [*Id.* ¶¶ 22, 23].

Plaintiff pled in conclusory fashion that Defendants Temple and Semosky are aware, or perceive that, the Plaintiff is a veteran, is of a young age, and suffers from physical and mental disabilities.  [*See id.* ¶¶ 19, 26, 28, 36, 53, 54, 56]. Read liberally, the facts pled to support this allegation are that on unknown dates,

Semosky has "told [Plaintiff] that many people were 'unhappy' that [he] returned to his employment as a police officer after completing his most recent tour of combat duty," has frequently sworn at the Plaintiff and "belittle[d] the plaintiff because of his age, implying that the plaintiff [was] too young to do his job properly;" was "frequently physically intimidating to the plaintiff . . . has thrown around pieces of furniture at the workplace when he becomes angry . . . intentionally subjected the Plaintiff to strenuous activity related to his knee . . . [and] accused the plaintiff of malingering." [*Id.* ¶¶ 26-29, 54].

The Court is unable to chronologize the following allegations because the vague and disorganized Complaint lacks dates for most factual allegations. However, a liberal reading of the Complaint suggests that Plaintiff alleges that as part of a series of conversations in 2012 and 2013, in which Plaintiff sought to discuss his work environment with Defendant Temple, Temple "instructed the plaintiff to refrain from arresting certain persons for the crime of driving under the influence," but told him he should instead "park their cars and take them home." [Id. ¶¶ 33, 37]. In response to Temple's instruction, the Plaintiff stated that his order was "unlawful, and dangerous, and [that he] would not do so." [*Id.* ¶ 34].

On September 18, 2012, Temple ordered that Plaintiff "not conduct criminal or motor vehicle investigations without the presence of a senior officer," and stated that "he would be disciplined further if he did not follow this order." [Id. ¶¶ 40-41]. Plaintiff claims that Temple's order made it "virtually impossible" for Plaintiff to do his job, because of the number of officers in the Town. [Id. ¶ 42].

On December 7, 2012, Temple is alleged to have stated that Plaintiff's "whole world would fall apart" if he disregarded his order. [Id. ¶ 43].

In February, 2013, Plaintiff alleges that he issued a motor vehicle infraction during a lawful motor vehicle stop to a friend of Defendant Temple.  As a result, on February 10, 2013, "Temple demanded the Plaintiff provide him with a written report of the [] stop," and conducted an Internal Affairs investigation of the Plaintiff.  [Id. ¶¶ 44-47].  Thereafter, Plaintiff alleges that "upon information and belief, the defendants solicited false complaints from citizens about the plaintiff, taking the unprecedented step of seeking out persons to complain about the plaintiff," that "the defendants created falsely negative evaluations about the plaintiff," that the defendants attempted to have the plaintiff arrested by warrant without any probable cause, and that in March, 2014, Temple attempted to "have Plaintiff's police officer certification revoked by the police officer standards and training council."  [Id. ¶¶ 51, 52, 55. 63, 64].

On April 30, 2013, Temple suspended Plaintiff from his employment.  [Id. ¶ 56].  During the Plaintiff's suspension, Temple repeatedly ordered Plaintiff to be subjected to "invasive fitness for duty mental health examinations[,]" even though Temple had knowledge that Plaintiff was "cleared for duty by a physician" [Id. ¶ 57].  The Plaintiff's suspension continued with pay until March 3, 2014; from March 3, 2014 to April 30, 2014, Plaintiff was suspended without pay.  [Id. ¶ 61].  "On May 1, 2014, the defendants placed Plaintiff on paid administrative leave, where he remained until the [complaint was filed]."  [*Id.*]  When the complaint was filed, Plaintiff was placed on leave without pay.  [*Id.*]

Plaintiff alleges that he had never been subjected to an Internal Affairs investigation before revealing his "military related disabilities" but does not allege to whom he revealed a disability, which disability he revealed, and whether there was any proximity in timing between the revelation and the events that followed.  [Id. ¶ 48].  Plaintiff also alleges that Temple had "repeatedly commented negatively upon the plaintiff's status as a veteran, and how this allegedly interfered with the plaintiff's ability to perform his job," and had frequently used profanity toward the plaintiff.  [Id. ¶ 35, 36, 50].

Plaintiff received a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and a Right to Sue Letter from the Equal Employment Opportunities Commission.  [Id. ¶ 70].  Plaintiff filed the original Complaint in this action on July 23, 2014.  [Dkt. #1].  On October 7 and October 9, 2014, both the Town Defendants and the State Defendants moved for a more definite statement from the Plaintiff, noting that it was virtually impossible to tell what factual allegations the Plaintiff alleged in support of each respective claim for discrimination and for each respective claim for violations of constitutional rights.  [Dkt. #21; Dkt. #22].  Defendants further noted that because the Complaint lacked dates for most factual allegations, the statute of limitations could bar liability on certain of the alleged conduct, and some claims may not have been timely brought before the CCHRO.

During this time, Plaintiff's counsel, William S. Palmieri of New Haven, Connecticut, became aware that Plaintiff had not effected service on the State

Defendants.[1]  Rather, it appears that Mr. Palmieri simply mailed a waiver of
service form to the State Defendants, which was not returned.  Palmieri was first
notified of his failure to serve the State Defendants during the parties' Rule 16(b)
Pretrial Conference on October 14, 2014 and counsel's acknowledgement of this
notification is memorialized in the Rule 26(f) Report.  [See Dkt. #26, Rule 26(f)
Report, at 1].  Plaintiff's counsel was also put on notice when counsel for the
State Defendants filed a Notice of Appearance for the limited purpose of
challenging lack of jurisdiction for failure to effectuate service.  [Dkt. #34].  The
State Defendants then raised the issue prominently in their Motion to Dismiss
filed on December 18, 2014.  [See Dkt. #35, State Defs.' Mem. at 6-10].  Plaintiff
has not sought leave of this Court to effectuate late service on any Defendant.

        Mr. Palmieri filed an Amended Complaint on November 4, 2011.  [Dkt. #28].
Plaintiff's Amended Complaint is slightly less vague, though no less disorganized
and at times equally incoherent as the original Complaint.  All of Plaintiff's
allegations are simply listed, in no particular order, in Count One.  Plaintiff then
includes by reference, in each subsequent Count, every single prior paragraph,
whether relevant or not, and conclusorily states that the Defendant violated a
given statute, constitutional provision or common law tort.  Nonetheless, the

---

[1] A Notice of Appearance was first entered on behalf of the Town of Oxford on
September 2, 2014.  [Dkt. #9].  The Town has not individual raised lack of service as a
defense.  Defendant Temple returned a waiver of service on September 3, 2014.
[Dkt. #15].  Defendant Semosky returned a waiver of service signed in his
"individual capacity" only on September 8, 2014, [Dkt. #16], and a Notice of
Appearance was filed on his behalf in his individual capacity only on October 3,
2014 [Dkt. #17].  The State Defendants filed a Notice of Appearance on December
18, 2014 for the limited purpose of challenging jurisdiction due to lack of proper
service.  [Dkt. #34].

Court considered granting Plaintiff leave to file a Second Amended Complaint, but determined it would be futile given the facial defects in the previous two Complaints filed in this action.

Currently before the Court are the Defendants' Motions to Dismiss the Plaintiff's Amended Complaint, in its entirety, for failure to state a claim, for lack of subject matter jurisdiction for failure to timely present some of his discrimination claims to the Commission on Human Rights and Opportunities ("CHRO"), and for lack of personal jurisdiction due to failure to serve the State Defendants.  [Dkt. #35, State Defs.' Mot. to Dismiss at 1; Dkt. #33 Town Defs.' Mot. to Dismiss at 1].

After Defendants moved to dismiss the Amended Complaint, Mr. Palmieri first asked for, and was granted, a thirty day extension of time *nunc pro tunc* to object to the motions to dismiss.  Plaintiff then filed an opposition brief—without leave—one day past the already-extended deadline.  The "memorandum of law" is a fifty-four page document exceeding both the forty page limit for memoranda under Local Rule 7(a)(2) and the forty-six page limit set forth in this Court's Chambers Practices.  [*See* Dkt. #40, Pl's.. Opp.].  Palmieri's brief fails to mention several of the claims brought in the Amended Complaint, and fails to address many of the arguments raised by Defendants in the Motions to Dismiss, including failure of service on the State Defendants.  Rather, Mr. Palmieri began his opposition brief by reciting the entire Amended Complaint.  In later sections of the memorandum, Mr. Palmieri 'copied and pasted' sections of his Amended Complaint, without adding substantive argument.

III.    **Standard of Review**

    a.   **Failure to State a Claim, Fed. R. Civ. P. 12(b)(6)**

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' "  *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting Iqbal, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"

*Id.* (quoting Iqbal, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

      **b.**  <u>Lack of Subject Matter Jurisdiction, Fed. R. Civ. P. 12(b)(1)</u>

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'  *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d. Cir.2003).  However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6).  *Id.*; *Hailey v. Connecticut*, No. 3:10-CV-1787 VLB, 2011 WL 6209748, at *2 (D. Conn. Dec. 14, 2011).

      **c.**  <u>Lack of Personal Jurisdiction for Insufficient Service of Process,</u>
          <u>Fed. R. Civ. P. 12(b)(2) and 12(b)(5)</u>

Under Rule 12(b)(2), a party may file a motion to dismiss for lack of Personal Jurisdiction. Fed. R. Civ. P. 12(b)(2). "A plaintiff bears the burden of showing that the court has personal jurisdiction over each defendant." *Carney v. Beracha*, 996 F. Supp. 2d 56, 60 (D. Conn. 2014) (*citing Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996).

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Intern., Ltd. V. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). "Under Rule 12(b)(5), a party may file a motion to dismiss due to insufficiency of service of process." *Rzayeva v. United States*, 492 F.Supp.2d 60, 74 (D.Conn.2007) (*citing* Fed. R. Civ. P. 12(b)(5); *Greene v. Wright*, 389 F.Supp.2d 416, 426 n. 2 (D.Conn. 2005)). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Id.* (*citing Cole v. Aetna Life & Cas.*, 70 F.Supp.2d 106, 110 (D.Conn.1999)). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Id.* (internal quotation marks omitted).

IV.   <u>Discussion</u>

   a. <u>The Court Lacks Personal Jurisdiction over the State, the State Police, and Semosky in his official capacity Due to Insufficient Service of Process</u>

Fed. R. Civ. P. 4(m) requires a plaintiff to serve his complaint on a defendant within 120 days after the complaint is filed. Fed.R.Civ.P. 4(m).

Although the Court may extend the time for service upon a showing of good cause by the plaintiff, in the absence of good cause, the Court may deny such extensions and dismiss the action.  *See Harper v. City of New York*, 424 Fed.Appx. 36, 39 (2d Cir.2011) ("[w]e have interpreted the Rule to give courts both the discretion to grant extensions of the period of service even where no good cause has been shown and, in the absence of good cause, to deny such extensions—that is, a court 'may grant an extension ... but it is not required to do so.' ") (*citing Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir.2007); *see also Bogle–Assegai v. Connecticut*, 470 F.3d 498, 508–509(2d Cir.2006) (affirming a district court's dismissal for failure to timely effect service of process under Rule 4(m) where the plaintiff "made no effort to show good cause for her failure and never requested an extension of time").

Plaintiff's attempt to serve the State Defendants by mailing a waiver of service form disregarded both Fed. R. Civ. P. 4(j)(2) and Conn. Gen. Stat. Sec. 52-64, which require that service be left with or sent to, via certified mail, the Attorney General, in Hartford, CT.  Despite Plaintiff's counsel having received notice on multiple occasions regarding his failure to serve and Mr. Palmieri's overt acknowledgment in the October 14, 2014, Rule 26(f) Report that the State, State Police, or Semosky in his official capacity "ha[d] not been served," to this date, the Plaintiff has made no attempt to effectuate service or request leave of the Court to do so, let alone provide any good cause for such leave.  Even if the Court were inclined to exercise its discretion to overlook the deficiencies in service of process, late service would be futile, as the State Defendants' Motion to

Dismiss would likely be granted on other grounds, particularly Eleventh Amendment immunity and qualified immunity.[2]

Accordingly, all of Plaintiff's claims against the State, the State Police, and Semosky in his official capacity are DISMISSED.  The remainder of this opinion examines the various claims against Temple in his individual and official capacity, the Town, and Semosky in his individual capacity ONLY.

### b.  Disability Discrimination Claims Under the ADA and the Rehab Act

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  A prima facie claim under the Rehab Act requires the same showing as a claim under the ADA, but requires the Plaintiff to show additionally that his employer receives federal funds.  *See* 29 U.S.C. § 794; *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

### i.  Actual Disability

---

[2] *See Respass v. Murphy*, No.3:10–cv–318, 2010 WL 2232674, at *2 (D. Conn. June 2, 2010) (finding that § 1983 claims for damages against defendants in their official capacities were barred by the Eleventh Amendment which protects state from suits for monetary relief and also protects state officials sued in their official capacity) (citations omitted); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather against the official's office").

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). A major life activity is one "of central importance to daily life," such as "walking, seeing, and hearing." *Toyota Motor Mfg., Ky., Inc. v. William*s, 534 U.S. 184, 197-98 (2002). In addition, the degree of impairment must be significant enough to substantially limit that activity. *See* 42 U.S.C. § 12102(1)(A). When analyzing these claims, "courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." *Troeger v. Ellenville Cent. Sch. Dist.*. 523 F. App'x 848, 852 (2d Cir. 2013) (citation and quotation marks omitted).

The Plaintiff alleges that he is disabled under the ADA because he is diagnosed with PTSD and because he has suffered a permanent partial disability to his knee. [Dkt. #28, Amend. Compl. ¶¶ 17, 53]. Beyond the Plaintiff's allegation that he has PTSD and an unspecified "permanent partial disability" to his knee, he does not describe in any way how his life activities are affected and whether he requested or was provided accommodation. To the contrary, Plaintiff alleges that his life activities were seemingly unaffected, arguing that he had been "cleared . . . to return to work," that he was "capable of performing his job," and that his "work as a police officer has been excellent," as evidenced by his nomination for and receipt of "numerous accolades and citations." [Id. at ¶¶ 20-21, 53-54, 59]. Dismissal is appropriate where, as here, a plaintiff fails to allege specific facts showing that a claimed disability affected one or more major life

activities.  *See Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 210 (D. Conn. 2012) (dismissal appropriate where plaintiff Plaintiff only alleged that she suffered from transverse myelitis "and pled no other facts indicating how this condition substantially limited one or more major life activities") (*citing Baptista v. Hartford Bd. of Educ.*, 427 Fed.Appx. 39, 42 (2d Cir. 2011).  Accordingly, the Plaintiff has not alleged that he suffers from a disability, as that term is defined under the ADA.

ii.  <u>Perceived Disability</u>

Alternatively, the Plaintiff has asserted in conclusory fashion that the defendants "regarded" him as having a disability.  [Id. ¶¶ 18, 19].

Subsequent to the ADA Amendments Act of 2008 ("ADAAA"), an individual meets the requirement of "being regarded as having" a disability if the individual establishes: "[(1)] that he or she has been subjected to an action prohibited under [the ADA] because of an [(2)] actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A)1.  However, an individual does not satisfy the requirement of "being regarded as having such an impairment" if the impairment is "transitory and minor."  42 U.S.C. § 12102(3)(B).

The facts Plaintiff has pled suggesting a perception of disability are few, and highly contradictory.   To establish a perception of Plaintiff as disabled, the Complaint alleges, in conclusory fashion, that [t]he defendants are aware of the plaintiff's disabilities or perceive him as disabled."  [Dkt. #28, Amend. Compl. at ¶ 19].   However, "[a] plaintiff cannot establish a prima facie case based on purely

conclusory allegations of discrimination, absent any concrete particulars."  *Vogel v. CA, Inc.*, 44 F. Supp. 3d 207, 221 (D. Conn. 2014) (*citing Ruszkowski v. Kaleida Health Sys.*, 422 Fed.Appx. 58, 60 (2d Cir. 2011)).

Plaintiff fails to allege specific facts from which the Court can infer that any Defendant regarded Plaintiff as disabled because of a knee injury.  The Complaint states that Plaintiff has a "permanent partial disability" to his knee, but does not specify the injury or its effect.  Plaintiff merely alleges that Semosky "was aware" that Plaintiff "returned to work capable of performing his job" and that Semosky "was aware that the plaintiff's physician had cleared the plaintiff to return to work."  [*Id.* ¶19].  These are the only two facts that relate to any Defendant's perception of Plaintiff's knee injury and, if anything, they suggest Plaintiff was *not* perceived to be disabled.  *See Bryant v. Greater New Haven Transit Dist.*, 8 F. Supp. 3d 115, 141 (D. Conn. 2014) (correspondence received from Plaintiff's cardiologist stating that Plaintiff was "OK to return to work" did not establish that Defendants perceived Plaintiff as disabled).  From these two vague factual allegations alone, it is "merely possible, but not plausible" that any Defendant perceived Plaintiff as disabled or otherwise undertook an adverse employment action because of plaintiff's knee.  *Logan v. SecTek, Inc.*, 632 F. Supp. 2d 179, 184 (D. Conn. 2009); *see also Reeves v. Johnson Controls World Svcs., Inc.*, 140 F.3d 144, 153 (2d Cir. 1998) ('the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action.'").

Similarly, Plaintiff fails to allege specific facts from which the Court can infer that any Defendant regarded Plaintiff as disabled because of a mental health-related disability.  The Complaint states that "the plaintiff suffers from Post Traumatic Stress Disorder ("PTSD") and other conditions associated with active military combat duty."  [Dkt. #28, Amend. Compl. ¶ 17].  This is the only instance in the Complaint in which PTSD is mentioned.  The Complaint goes on to allege that Temple "repeatedly ordered the plaintiff to be subjected to unnecessary and invasive" fitness for duty evaluations.  [Id. ¶ 57].  The Court cannot simply infer from this allegation, however, that (i) Temple knew about Plaintiff's PTSD, (ii) that Plaintiff's PTSD was the reason Temple ordered him to be evaluated, or (iii) that the evaluations constituted adverse employment actions or otherwise resulted in Plaintiff's administrative leave.  On the contrary, the Complaint states that "they" (presumably Temple) "had actual knowledge that [Plaintiff] had been cleared for duty by a physician."  [Id. ¶ 59].  Once again, this allegation does not establish a perception of disability.  *See Bryant*, 8 F. Supp. 3d. at 141.  These allegations again fail to cross the line between a possible perception of disability resulting in adverse employment actions and one that is plausible on its face.  *Logan*, 632 F. Supp. 2d at 184.

Elsewhere in the Complaint, Plaintiff alleges that defendants evaluated his performance negatively and subjected him to an internal affairs investigation, for which he was cleared of any wrongdoing, and that these types of events had generally not occurred prior to Plaintiff "revealing that he suffered from the military related disabilities" or his "disclosure of war and job related disabilities."

[Dkt. #28, Amend. Compl. ¶¶ 48, 52].  Plaintiff, however, never pleads facts indicating to whom a disability was disclosed and what disability was disclosed.  Moreover, the Court cannot make an inference based upon the timing of the disclosure and the adverse employment actions, because the Complaint does not alleged when any disclosure took place.[3]

Accepting all of Plaintiff's factual allegations as true, Plaintiff has failed to adequately plead an ADA perceived disability claim because the Complaint fails to allege facts establishing any causal connection between a perceived disability and an adverse employment action.  The Court cannot simply infer that any Defendant knew about a specific disability, perceived that he was mentally or physically impaired and that this perception was a cause of any adverse employment actions.  *Reeves*, 140 F.3d at 153.  Although there are actions alleged in the Complaint, including placing Plaintiff on administrative leave, that could constitute an adverse employment action in certain contexts, the Complaint does not allege facts suggesting a causal connection between Plaintiff's placement on administrative leave and a perception of disability.  *See Jordan v. Forfeiture Support Associates*, 928 F. Supp. 2d 588, 607-08 (E.D.N.Y. 2013) (Plaintiff failed to state a claim under the ADA by offering "only conclusory allegations devoid of

---

[3] Even if the Court could infer a perception of disability from these vague and conclusory allegations, a negative performance evaluation, by itself, is generally not an adverse employment action unless it negatively impacts the terms and conditions of a plaintiff's employment.  *See Kaur v. N.Y.C. Health & Hospitals Corp.*, 688 F.Supp.2d 317, 332 (S.D.N.Y.2010) ("In the disparate treatment context, a negative performance evaluation only qualifies as an adverse employment action if there are accompanying adverse consequences affecting the terms of employment.").  Plaintiff has not pled facts indicating how his negative performance evaluations affected the terms and conditions of his employment.

any factual matter rendering plausible her claim that defendant terminated her on the basis of her carpal tunnel syndrome.").  As such, Plaintiff has failed to state a plausible claim for relief under the ADA and the Rehab Act.[4]  Plaintiff's ADA and Rehab Act claims against the remaining defendants are DISMISSED.

### c.  Age Discrimination Claim Under the ADEA

To establish a prima facie case of age discrimination under the ADEA the plaintiff must show, inter alia, that "he is a member of the protected class." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  The ADEA explicitly states that its prohibitions "shall be limited to individuals who are at least 40 years of age."  29 U.S.C. §631(a); *see* also *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 590-91 (2004) (stating that the purpose of the ADEA is "to protect a relatively old worker from discrimination that works to the advantage of the relatively young."); *Natale v. Town of Darien*, No. 3:97CV583 (AHN), 1998 WL 91073, at *3 (dismissing plaintiff's ADEA claim because he was under 40 years old at the time of the alleged age discrimination).  The Plaintiff alleged that he was twenty-nine years old, or younger, during his entire period of employment with the Town and during all relevant events alleged in the complaint.  [Dkt. #28, Amend. Compl. ¶¶ 5, 16].  Accordingly, Plaintiff's age discrimination claim under the ADEA is DISMISSED.

### d.  Civil Rights Violation under Title VII

---

[4] Defendants have noted that, even if Plaintiff was found to be disabled, his Rehab Act claim must fail because he did not allege that his employer received federal funds, as is required to bring a claim under the Rehab Act. *See* 29 U.S.C. § 794; *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir.2003).

Although Plaintiff alleged that he was discriminated against based on his age, disability, and military status, he has not alleged that he is within a class of persons protected from discrimination under Title VII, which applies to discrimination based on "race, color, religion, sex, or national origin."  42 U.S.C. § 2000(e)-(2)(a).  Accordingly, Plaintiff's claim under Title VII is DISMISSED.

### e. Discrimination Claim Under CFEPA

#### i. Age Discrimination Claim Under CFEPA

For the same reasons stated in Section IV(c), to the extent that Plaintiff's CFEPA claim is based on age discrimination, the Complaint fails to state a claim. *See, e.g., Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 280 (D. Conn. 2009) (stating that "federal law guides analysis of Connecticut's anti-discrimination statutes, including CFEPA"); *Rogers v. First Union Nat. Bank*, 259 F. Supp. 2d 200, 209 (D. Conn. 2003) (stating that it "is likely that the Connecticut Supreme Court . . . define[s] the protected group [of persons under CFEPA] by imposing an age "floor," such that all persons over the designated age would constitute the protected class.  As to the specific age the Connecticut Supreme Court would select, it appears that the Supreme Court would use the same age floor used in ADEA – age 40.").

#### ii. Disability Discrimination Claim Under CFEPA

For the same reasons stated in Section IV(b), to the extent that Plaintiff's CFEPA claim is based on disability discrimination, Plaintiff fails to state a claim.

Connecticut courts generally use the same analysis for both ADA and CFEPA

claims.  *Buck v. AT & T Servs.*, No. 3:08–cv–1619, 2010 U.S. Dist. LEXIS 63941, at

*1 n. 1, 2010 WL 2640045 (D. Conn. June 28, 2010) ("Connecticut courts generally

analyze ADA and CFEPA claims under the same standard.") (*citing Ann Howard's*

*Apricots Rest. v. Comm'n on Human Rights and Opportunities*, 237 Conn. 209,

676 A.2d 844, 853–54 (Conn.1996)).

CFEPA's definition of disability does include a "regarded as" prong, and

such claims are assessed under the ADA's "regarded as disability" framework.

*Desrosiers v. Diageo N. Am., Inc.*, 314 Conn. 773, 794 (2014).  As discussed in

Section IV(b), Plaintiff has failed to adequately plead a perceived disability claim

under CFEPA because the Complaint fails to allege facts establishing that any

Defendant perceived Plaintiff as disabled because of his knee or his PTSD, and

fails to allege any causal connection between a perceived disability and an

adverse employment action.


    f.   Military Status Discrimination Claim under USERRA

USERRA provides that "[a] person who is a member of, applies to be a

member of, performs, has performed, applies to perform, or has an obligation to

perform service in a uniformed service shall not be denied initial employment,

reemployment, retention in employment, promotion, or any benefit of

employment by an employer on the basis of that membership, application for

membership, performance of service, application for service, or obligation."  38

U.S.C. § 4311(a); *Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*,

423 F.3d 153, 158 (2d Cir. 2005).  USERRA imposes liability for violations upon ''any person . . .  [who] . . . has control over employment opportunities'' including ''a person . . . to whom the employer has delegated the performance of employment-related responsibilities.''  38 U.S.C. 4303(4)(A)(i).

To survive a motion dismiss on a USERRA claim, a plaintiff must allege sufficient facts to establish "a prima facie case of discrimination by showing ... that his protected status was a substantial or motivating factor in the adverse [employment] action."  *Hunt v. Klein*, No. 10 CV 02778 GBD, 2011 WL 651876, at *3 (S.D.N.Y. Feb. 10, 2011), aff'd, 476 F. App'x 889 (2d Cir. 2012) (*citing Gummo v. Village of Depew*, 75 F.3d 98, 106 (2d Cir.1996)); *see* 38 U.S.C. 4311(c)(1). Discriminatory motivation may be proven through direct or circumstantial evidence, including "an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses."  *Lovell v. Consol. Edison of New York, Inc.*, No. 14-CV-7592 CBA, 2015 WL 2250374, at *4 (E.D.N.Y. May 11, 2015) (*citing Woodard v. New York Health & Hosps. Corp.*, 554 F.Supp.2d 329, 348–49 (E.D.N.Y. 2008)).

There are two alleged facts in the Amended Complaint related to a possible motive to discriminate on the basis of protected military status.  First, Semosky is alleged to have told the Plaintiff that "people" were "unhappy" that he returned to his employment as a police officer after his tour of combat duty.  Even accepting this allegation as true, the allegation fails to establish a plausible inference that

Semosky himself was motivated by a discriminatory animus.  The "people" Semosky referred to could simply have been unhappy that they again had to work with Plaintiff because of, for example, Plaintiff's repeated refusal to obey orders. Second, Temple is alleged to have "commented negatively on the Plaintiff's status as a veteran and commented on how this interfered with the plaintiff's ability to perform his job."  [Dkt. #28, Amend. Compl. ¶ 36.].   Once again, however, other allegations in Plaintiff's rambling Complaint contradict any inference of discriminatory animus on Temple's part.  Plaintiff elsewhere alleges that Temple "made plain to the plaintiff" that his "animus toward the plaintiff" was "personal."  [Id. ¶ 35].  These vague and oblique allegations of negative comments about military service, divorced from the context of any adverse employment decision or any chronological timeline, fail to plausibly allege discriminatory animus.  *See Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir.2007) ("[t]he more ... oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination.").

    But even if these comments did reveal a discriminatory animus by either Temple or Semosky, Plaintiff fails to allege that either Defendant took any adverse employment action because of a discriminatory animus against veterans. On the contrary, the Plaintiff explicitly alleges that the Defendants suspended him from employment "due to his disability of PTSD." [Dkt. #28, Amend. Compl. ¶ 56.]. In fact, even the most conclusory allegations in the Complaint fail to mention protected military status as a cause of Plaintiff's woes; Plaintiff alleges, for

example, that he "has been subjected to an ongoing pattern of harassment, discrimination, hostility and disparate treatment based upon his disabilities or perceived disabilities, his age and in retaliation for his protected complaints to and about the defendant." [Id. ¶ 66]. Finally, because the Plaintiff does not include dates with any of his factual allegations, the Court is unable to make an inference of discriminatory animus based upon the timing of Plaintiff's return from military service.

The Court cannot draw a causal inference that negative comments about Plaintiff's protected military status reveal a discriminatory animus by any one of the many Defendants that resulted in any one of the many alleged adverse employment actions. *See Hunt v. Klein*, No. 10 CV 02778 GBD, 2011 WL 651876, at *4 (S.D.N.Y. Feb. 10, 2011) aff'd, 476 F. App'x 889 (2d Cir. 2012) (dismissing USERRA claim where "Plaintiff's Complaint merely describes various disciplinary actions taken against him, and notes that Plaintiff is a military service member."). Absent any factual allegations allowing for a plausible inference of a nexus between a discriminatory animus by any one Defendant and a specific adverse employment action, Plaintiff has failed to state a claim under USERRA. Accordingly, Plaintiff's claim of discrimination under USERRA is DISMISSED.

### i.  Retaliation Claims Under USERRA

"In order to make out a prima facie case of retaliation under USERRA, a plaintiff must show that (1) he was engaged in protected activity; (2) that the employer was aware of that activity; (3) that the plaintiff suffered an adverse employment action; and (4) that there was a causal connection between the

protected activity and the adverse action." *Fink v. City of New York*, 129 F.Supp.2d 511, 527 (E.D.N.Y.2001)); 38 U.S.C. 4311(c)(2).

Plaintiff has failed to allege with specificity that he engaged in any protected activities—such as making complaints about any perceived discrimination based on his military status. Moreover, Plaintiff has failed to allege with specificity that any adverse action was taken by Defendants in retaliation for protected complaints about military status discrimination. Accordingly, the Court dismisses the plaintiff's retaliation claim under USERRA.

### g. Constitutional Violations brought under 42 U.S.C. § 1983

#### i. Violation of U.S. Const. Amend. XIV, Equal Protection Claim

To state an claim for an Equal Protection violation, the plaintiff must allege facts showing that he was treated differently from other similarly situated individuals and the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and citation omitted). Plaintiff has not alleged facts showing that he was treated differently from similarly situated employees or that his treatment was based on impermissible considerations.

The plaintiff also can assert an equal protection claim on a "class of one" theory. To state a valid equal protection "class of one" claim, the plaintiff must allege, first, that he has been intentionally treated differently from others similarly situated and, second, that there is no rational basis for the difference in

treatment.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The plaintiff must allege an "extremely high" level of similarity with the person to whom he is comparing himself.  *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds, Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d. Cir. 2008).  The plaintiff has identified no other employee who was treated differently under similar circumstances.  Thus, he fails to state an equal protection class of one claim.  *See, e.g., Page v. Lantz*, No. 3:03cv1271, 2007 U.S. Dist. LEXIS 46041, at *16-17 (D. Conn. June 26, 2007) (holding that class of one equal protection claim fails as a matter of law where plaintiff did not allege that similarly situated inmates were treated differently under similar circumstances).  The plaintiff's equal protection claim is DISMISSED.

### ii.  Violation of U.S. Const. Amend. V, Due Process Claim

#### 1.  Procedural Due Process

In analyzing procedural due process claims, courts must determine: (i) whether a plaintiff possessed a protected liberty or property interest; and (ii) what process a plaintiff was due before any deprivation of such interest.  *Roman v. Valleca*, No. 3:11CV1867 (VLB), 2012 WL 4445475, at *12 (D. Conn. Sept. 25, 2012) (*citing Sealed v. Sealed*, 332 F.3d 51, 55 (2d Cir. 2003)).

In the context of employment, "a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause."  *Legg v. Dellavolpe*, 228 F.Supp.2d 51, 61 (D.Conn.2002) (*citing S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 967 (2d Cir.1988)).  In his Amended Complaint, Plaintiff has only alleged that he

was placed on administrative leave without pay and has not alleged that he was barred from termination without cause by statute.  Defendants have noted that this allegation is insufficient to state a recognizable property interest.  In his opposition memorandum, Mr. Palmieri did not address his procedural due process claim.  The Court therefore considers Plaintiff's procedural due process claim to be both abandoned[5] and futile.  Plaintiff's procedural due process claim is DISMISSED.

### 2.   Substantive Due Process

To bring a substantive due process claim against Semosky, Plaintiff must (1) allege the existence of some constitutionally protected interest, and (2) allege action by Semosky that "was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Benzman v. Whitman*, 523 F.3d 119, 126 (2d Cir. 2008) (internal quotations omitted).  A substantive due process claim may be dismissed if it is "subsumed by other constitutional claims, or ... does not amount to a substantive due process violation as a matter of law."  *Roman v. Valleca*, No. 3:11CV1867 (VLB), 2012 WL 4445475, at *10 (D. Conn. Sept.

---

[5] *See* Local Rule 7(a)(1)(stating that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."); *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 143-44 (E.D.N.Y. 2014)(noting that "courts in this circuit have held that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims); *Marrow v. Amato*, No. CIV. 3:07CV401 (PCD), 2009 WL 350601, at *7 (D. Conn. Feb. 12, 2009)(Plaintiff abandoned claim by "failing to provide any response to [the Defendant's argument in its Motion] . . . or to address [the] claim in any manner."); *Coger v. Connecticut*, 309 F.Supp.2d 274, 280 (D.Conn.2004) (the court can consider a § 1981 claim abandoned merely because the plaintiff failed to respond to the defendant's argument in favor of summary judgment).

25, 2012).  In addition, if factual allegations shock the conscience only insofar as they constitute specific constitutional violations, plaintiffs may not seek redress under substantive due process.  *Id.* (*citing Velez v. Levy*, 401 F.3d 75, 94 (2d Cir . 2005)).

Plaintiff has not specified which actions of which Defendants give rise to a substantive due process claim separate and apart from his other constitutional claims.  In opposition to the Motion to Dismiss, Mr. Palmieri argued that "Semosky and Temple engaged in a series of outrageous actions against the plaintiff, designed to break him and to deprive him of his constitutionally protected right to employment . . . ."  Mr. Palmieri then 'copied and pasted' all of the factual allegations in the Complaint.  [*See* Dkt. #40, Pl's. Opp. at 27-32].

Nonetheless, read liberally, Plaintiff's substantive due process claims do not allege facts that are so egregious as to "shock the conscience" as a matter of law.  *See Roman*, 2012 WL 4445475, at *11 (dismissing substantive due process claim where public employee alleged that his employer "fabricated incidents of misconduct in order to impugn the Plaintiff's reputation, causing him to be reprimanded in writing, transferred, and suspended."); *Richards v. Connecticut Dept. of Corr.*, 349 F.Supp.2d 278, 293 (D.Conn.2004) (government-employer's conduct did not shock the conscience where defendant yelled, swore at, and berated plaintiff, who was then placed on leave).

Plaintiffs substantive due process claims are DISMISSED.

### iii.  Violation of U.S. Const. Amend. I, Freedom of Speech Claim

Plaintiff contends that Defendants Semosky and Temple, in their individual capacities, retaliated against him for the exercise of his right to freedom of speech under the First Amendment.

"In the First Amendment context, 'the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.'" *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012) (*quoting Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968)). "The government, as an employer, has a legitimate interest in regulating the speech of its employees to promote the efficiency of its public services." *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003)(citations and internal quotation marks omitted).

When public employees make statements pursuant to their official duties, the employees are not speaking as citizens, even if such speech regards a matter of public concern. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Thus, to determine whether the speech at issue is constitutionally protected, the court must first decide whether the plaintiff was speaking as a 'citizen,' rather than as a public employee. *Brady v. Cnty. of Suffolk*, 657 F. Supp. 2d 331, 342 (E.D.N.Y. 2009) (*quoting Garcetti*, 547 U.S. at 411-12). "If the answer is 'no,' then no First Amendment claim arises, and that ends the matter." *Caraccilo v. The Village of Seneca Falls, N.Y.*, 582 F.Supp.2d 390, 405 (W.D.N.Y. 2008).

Therefore, a prima facie First Amendment retaliation claim requires the Plaintiff to prove that: "(1) the speech at issue was made as a citizen on matters

of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (internal quotation marks and citations omitted); *Everitt v. DeMarco*, 704 F. Supp. 2d 122, 129 (D. Conn. 2010).

The Amended Complaint does not specify the specific 'speech' that Plaintiff alleges caused the defendants to retaliate against him. *See* [Dkt. 28, Amend. Compl. at Count Six]. However, the Plaintiff's memorandum in opposition to the Motions to Dismiss identifies two separate incidents of speech: (1) Plaintiff's written complaint to the State Police regarding Semosky's conduct, and (2) Plaintiff's statement that Temple's order not to arrest certain persons for the crime of driving under the influence was "unlawful, and dangerous, and that he would not do so." *See* [Dkt. 40, Pl.'s Opp. at 42-43]. Neither example proffered by Plaintiff's counsel has identified specific, constitutionally-protected speech from which this Court can find a plausible claim of First Amendment retaliation.

Despite being given an opportunity to amend his Complaint, Mr. Palmieri has not detailed what complaints Plaintiff made to the State Police, what problems he identified with Semosky's behavior and what changes he sought from Semosky's superiors. However, assuming that Plaintiff complained to the State Police generally about the types of conduct alleged in the Complaint, such complaints would not be constitutionally-protected speech.

"When a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the

course of performing his job."  *Caraccilo v. Vill. of Seneca Falls, N.Y.*, 582 F. Supp. 2d 390, 410-11 (W.D.N.Y. 2008).  "Speech can be part of a public employee's duties even if it is not required by, or included in, the employee's job description, or in response to a request by the employer."  *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 202 (2d Cir. 2010).  Whether speech is "pursuant to" a Plaintiff's official duties turns on whether the speech "owes its existence to a public employee's professional responsibilities," and such professional responsibilities are to be interpreted broadly.  *Garcetti*, 547 U.S. at 421; *Matthews v. Lynch*, No. 3:07-CV-739 WWE, 2011 WL 1363783 (D. Conn. Apr. 11, 2011) aff'd, 483 F. App'x 624 (2d Cir. 2012).  The relevant inquiry is whether the employee's speech is "the kind of activity engaged in by citizens who do not work for the government."  *Garcetti*, 547 U.S. at 423.

Construing the first allegation liberally, Plaintiff's statements to the State Police concerned his interactions with his supervisor as an employee, during the course of his employment, and the manner in which Semosky's conduct affected his police work.  [See Dkt. #28, Amend. Compl. at 30] (stating that the Plaintiff's complaint was about Semosky's conduct concerned the "provision of police services").  Plaintiff's complaints to the State Police, therefore, appear to have involved nothing more than an "employee grievance, for which there is no relevant citizen analogue."  *Weintraub*, 593 F.3d at 198-99.  Such complaints are not constitutionally-protected.  *See Paola v. Spada*, 372 F. App'x 143 (2d Cir. 2010) (police officer's "complaints about his supervisor's alleged mismanagement and potentially unlawful conduct not entitled to First Amendment protection").

Similarly, Plaintiff's refusal to obey Temple's order concerning enforcement of driving under the influence laws and his statement – made privately to Temple – that the order was "unlawful, and dangerous, and that he would not do so" has not identified constitutionally protected speech.

First, the subject matter of his speech related to the performance of Plaintiff's duties as a police officer. *See Paola*, 372 F. App'x at 144 (police officer's "oral and written complaints about his supervisor's alleged mismanagement and potentially unlawful conduct were made pursuant to [his] official duties"); *Whitehead v. City of New York*, 953 F. Supp. 2d 367, 375 (E.D.N.Y. 2012) (police officer's speech related to his job duties when complaining about, and refusing "to comply with [an] illegal quota policy"); *Brady v. Cnty. of Suffolk*, 657 F. Supp. 2d 331, 342 (E.D.N.Y. 2009) (police officer was speaking about job duties when raising concerns about a county's alleged practice of not issuing tickets for traffic violations to off duty police officers).

Second, Plaintiff raised his complaints internally and up the chain-of-command to Temple, rather than placing his concerns into the public discourse. Such internal complaints by police officers, even where the subject matter touches on issues of public safety or integrity of office, are not constitutionally protected speech. *See Paola*, 372 F. App'x at 144 (police officer's complaints to Internal Affairs not protected speech); *Healy v. City of New York Dep't of Sanitation*, 286 F. App'x 744, 746 (2d Cir. 2008) (report of corruption made to direct superior without any external communication was not protected speech); *Whitehead*, 953 F. Supp 2d at 375 (no protected speech where plaintiff "confined

his opposition to and criticism of [a quota policy] within the NYPD and never attempted to communicate his complaints to the public").

Finally, courts have been particularly wary of similar First Amendment claims where, as here, the subject matter of the complaints concern "special knowledge gained through the Plaintiff's employment." *Brady v. Cnty. of Suffolk, 657 F. Supp. 2d 331, 343 (E.D.N.Y. 2009)*; *see Healy*, 286 Fed.Appx. at 746 (evidence of corruption uncovered during inventory check conducted as part of police officer's official duties); *Whitehead*, 953 F. Supp 2d at 375 (plaintiff's objection to quota policy raised "issues that he came to learn as part of his duties and responsibilities as a police officer").

Plaintiff has failed to allege that he was speaking as a 'citizen,' rather than as a public employee in regard to both of his alleged complaints to Temple and to the State Police. *See Garcetti*, 547 U.S. at 411-12. Even if he had been speaking as a private citizen, Plaintiff's complaints were primarily calculated to redress personal grievances and disliked employment conditions. *See Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) ("Speech that, although touching on a topic of general importance, primarily concerns an issue that is 'personal in nature and generally related to [the speaker's] own situation,' such as his or her assignments, promotion, or salary, does not address matters of public concern."); *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008)(stating that "the heart of the matter is whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose").

Plaintiff's First Amendment retaliation claim is DISMISSED.

### h.  Municipal Liability Claim

To establish municipal liability under Section 1983, a plaintiff must plead and prove "(1) an official policy or custom that (2) causes the plaintiff to be subject to (3) a denial of a constitutional right."  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).  Because plaintiff has not stated a plausible claim for relief for violations of any constitutional right in his various Sec. 1983 claims, Plaintiff similarly has not stated a claim against the Town of Oxford.  Plaintiff's claim for municipal liability is DISMISSED.

### i.  Intentional Infliction of Emotional Distress ("IIED") Claim

Because Plaintiff has failed to raise a claim under federal law, the Court lacks subject matter jurisdiction over Plaintiff's claim for intentional infliction of emotional distress ("IIED") under Connecticut law.  But even if one of Plaintiff's various federal claims stated a claim for relief such that this Court could exercise supplemental jurisdiction over the IIED claim, Plaintiff has failed to state a claim for IIED. [6]

---

[6] The Court notes that in Connecticut, governmental immunity bars intentional tort claims against municipalities. *See* CONN. GEN. STAT. § 52-557n(a)(2)(A); *O'Connor v. Bd. of Educ.*, 877 A.2d 860, 863 n.4 (Conn. App. Ct. 2005), *cert. denied*, 882 A.2d 675 (Conn. 2005); *Miles v. City of Hartford*, 719 F. Supp. 2d 207, 218 (D. Conn. 2010) ("The Connecticut Supreme Court has clearly held that a political subdivision of the state is immune to suit based on intentional infliction

To succeed on a claim for intentional infliction of emotional distress under Connecticut law, a plaintiff must show: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe. *Rivera v. Thurston Foods, Inc.*, 933 F. Supp. 2d 330, 343 (D. Conn. 2013) (citing Petyan v. Ellis, 510 A.2d 1337, 1342 (Conn. 1986)).

Plaintiff alleges that the Defendant Semosky intentionally inflicted emotional distress by swearing at the Plaintiff, "belittling" the Plaintiff, physically intimidating the Plaintiff, throwing pieces of furniture at the workplace, commenting negatively on Plaintiffs age, military status, and knee disability, and "intentionally subjecting the Plaintiff to strenuous activity related to his knee." [Dkt. #28, Amend. Compl. at ¶¶ 27-29, 32, 36, 43, 51-52, 54-57, 59, 62-65.]

Plaintiff alleges that Defendant Temple intentionally inflicted emotional distress by placing Plaintiff on administrative leave, subjecting Plaintiff to psychological evaluations, Temple's alleged solicitation of false complaints from citizens about Plaintiff, the alleged creation of falsely negative evaluations about the Plaintiff, a failed attempt to have the Plaintiff arrested by warrant without any probable cause, and a failed attempt to have Plaintiff's police officer certification revoked by the police officer standards and training board.  [Id.].

---

of emotional distress by an employee.").  Therefore, could only properly bring an IIED claim against Semosky and Temple in their individual capacities.

Even accepting all of the above facts as true, Plaintiff has failed to allege that the conduct of either Temple or Semosky was "extreme and outrageous" and has therefore failed to state a claim for IIED.  The Connecticut Supreme Court has provided the following guidance to determine whether conduct is "extreme and outrageous":

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

*Appleton v. Board of Educ.*, 757 A.2d 1059, 1062 (Conn. 2000) (internal quotations and citations omitted).

The Connecticut Supreme Court's opinion in *Appleton* is controlling here, as the facts alleged there are strikingly similar to the allegations against defendant Temple.  In *Appleton*, a teacher failed to state a claim for IIED when she alleged the principal placed her on administrative leave, subjected her to two psychological evaluations, called the police to have her escorted out of the building, collected information on her and conducted meetings outside her presence, made condescending comments to her in front of coworkers, and telephoned the teacher's daughter representing that the teacher had been acting differently.  *See Appleton*, 757 A.2d at 1061–63.  Similarly, Plaintiff has failed to

state claim against Temple with his allegations of placement on administrative leave, psychological evaluations, solicitation of falsely negative criticism from others and reporting of information to a police certification board.

Plaintiff's allegations against Semosky similarly fail to state a claim for IIED.  Generally, "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings," do not constitute extreme and outrageous conduct.  *Tomby v. Cmty. Renewal Team, Inc.*, No. 3:09cv1596(CFD), 2010 WL 5174404, *7 (D.Conn. Dec. 15, 2010). Plaintiff's allegations against Semosky of physical "intimidation", profanity, throwing of furniture and humiliation at the workplace are similar to allegations dismissed in prior cases of IIED brought by former employees.  *See Engle v. Bosco*, 2006 WL 2773603, at *3 (Conn. Super. Ct. 2006) (allegations of profanity, spitting and demeaning behavior insufficient to state a claim); *DeLaney v. Institute of Living*, 2002 WL 1559043, at *4 (Conn. Super. Ct. 2002) (IIED claim dismissed where plaintiff alleged abusive language, "contemptuous behavior" and humiliating orders); *Daigneault v. Consolidated Controls/Eaton Corp.*, 2002 WL 1539572, at *5 (Conn. Super. Ct. 2002) (IIED claim dismissed where supervisor was alleged to have physically bullied the plaintiff in part by massaging his shoulders and giving him bear hugs)

Plaintiff's claim for intentional infliction of emotional distress is DISMISSED.

V.   <u>Conclusion</u>

For the foregoing reasons, the Court GRANTS the State Defendants' Motion to Dismiss the Amended Complaint in its entirety, as all Defendants. Further, the Court GRANTS the Town Defendants' Motion to Dismiss the Amended Complaint in its entirety, as to all Defendants.

IT IS SO ORDERED.


_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**


**Dated at Hartford, Connecticut: September 30, 2015**